# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-1168

**MARIA PALACIOS, ET AL.**

**VERSUS**

**LOUISIANA & DELTA RAILROAD, INC., ET AL**

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 80628
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

## J. DAVID PAINTER
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

**AFFIRMED.**

Thibodeaux, Chief Judge, dissents and assigns written reasons.

**Charles Benjamin Landry**
**211 East Main Street**
**New Iberia, LA 70562**
**Counsel for Plaintiffs-Appellants:**
    **Maria Palacios, et al.**

**Leonard L. Levenson**
**Christian W. Helmke**
**427 Gravier Street, Third Floor**
**New Orleans, LA 70130**
**Counsel for Plaintiffs-Appellants:**
    **Maria Palacios, et al.**

**Leon J. Minvielle, III**
**1017 E. Dale Street**
**P.O. Box 11040**
**New Iberia, LA 70560**
**Counsel for Defendants-Appellees:**
**LIGA and City of Jeanerette**

**Andrew W. Ralson**
**P.O. Box 77651**
**Baton Rouge, LA 70879-7651**
**Counsel for Defendant-Appellee:**
**Department of Transportation and Development**

**PAINTER, Judge.**

Plaintiffs, Maria Palacios, individually and on behalf of her minor children, Jenny Garcia, Jose Garcia, Cynthia Palacios, and Jennifer Palacios, appeal the jury's finding of no negligence on the part of the City of Jeanerette and the trial court's denial of their motion for judgment notwithstanding the verdict and/or motion for new trial. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Maria Palacios, individually and on behalf of her minor children, Jenny Garcia, Jose Garcia, Cynthia Palacios, and Jennifer Palacios, filed suit against Louisiana and Delta Railroad, Inc., Mike Pastor, Johnny Sonnier, Kevin McNemar, National Security Fire and Casualty Company, Southern Pacific Transportation Company, Inc., the State of Louisiana through the Department of Transportation and Development (DOTD), the Parish of Iberia, and the City of Jeanerette, alleging that she suffered brain damage and other injuries after the car she was driving was stuck by a train on May 4, 1994 near the intersection of Annie Moore Road and Monnot Road in the City of Jeanerette. The Parish of Iberia was dismissed pursuant to a motion for summary judgment. Louisiana and Delta Railroad, Inc., Mike Pastor, Johnny Sonnier, Kevin McNemar, National Security Fire and Casualty Company, and Southern Pacific Transportation Company, Inc. settled with Plaintiffs prior to trial. The matter proceeded to trial by jury against DOTD and the City of Jeanerette on September 27, 2004. At the close of Plaintiffs' case, DOTD moved for a directed verdict. The trial court granted DOTD's motion for directed verdict by judgment signed October 8, 2004. That judgment dismissed Plaintiffs' case against DOTD with prejudice at Plaintiffs' costs. Plaintiffs appealed only the award of costs against them, and we affirmed the judgment of the trial court assessing DOTD's court costs against

1

Plaintiff. *See Palacios v. La. & Delta R.R., Inc.*, 05-590 (La.App. 12/30/05), ____ So.2d ____.

With respect to the City of Jeanerette, Plaintiffs argued that it was negligent because of its alleged failure to require and/or install warning lights, signals, and barriers at the crossing; failure to place adequate and sufficient warning devices at the crossing; and failure to maintain the intersection by keeping it free from overgrown vegetation. Following the trial, the jury returned its verdict that the City of Jeanerette was not negligent. Plaintiffs filed motions for judgment notwithstanding the verdict and for new trial. Plaintiffs' motions were based on their assertions that the jury's verdict was inconsistent because, even though the jury answered the question as to whether the City of Jeanerette was negligent in the negative, the jury assigned twenty percent of fault to the City of Jeanerette. Apparently, the jury had some question as to whether or not they were to proceed further on the jury interrogatories after they answered that the City of Jeanerette was not negligent and returned to the courtroom for clarification. Both motions were denied by the trial court. This appeal followed.

## DISCUSSION

Although Plaintiffs specify nine assignments of error, there are essentially two issues presented. First, Plaintiffs contend that the trial court erred in denying its motions for judgment notwithstanding the verdict and for a new trial based on the testimony of Plaintiffs' witness, Dr. Olan Dart. Secondly, Plaintiffs contend that the jury rendered an inconsistent verdict.

Plaintiffs contend that the testimony of their expert, Dr. Olan Dart, was uncontradicted, and if accepted as true, reasonable minds could not differ in reaching the conclusion that the City of Jeanerette was negligent. Dr. Dart was accepted as an

2

expert in the areas of highway design, traffic engineering, traffic safety, and civil engineering. In sum, Dr. Dart opined that the crossing at issue was under the control of the City of Jeanerette and was unreasonably dangerous due to the faulty placing of warning signs as well as the presence of excessive vegetation.

Plaintiffs contend that Dr. Dart's testimony was uncontradicted since neither DOTD nor the City of Jeanerette presented any expert testimony. However, the City of Jeanerette contends that it did not need to produce expert testimony because the Plaintiffs failed to meet their burden of proof and that Dr. Dart contradicted himself on cross-examination. The City of Jeanerette points to the following testimony of Dr. Dart on cross-examination:

Q:     Ok. So it would be unfair for this jury to believe that she had an obligation to protect her own safety only if she saw a train, because she has that obligation regardless of whether a train is coming or not?

A:     If she is aware of the situation she's in, that's correct.

Q:     Well, she can make herself aware by slowing and looking. That's her duty, is to show and look, isn't it?

A:     That's what it says.

Q:     Yes sir. And she shouldn't proceed without looking and being certain that there is not a train coming. That's the law.

A:     That's correct.

Q:     Now, isn't it true, had she done that, we wouldn't be here today?

A:     If she realized that she was approaching and did that, that's correct.

Q:     Right. She had the signs out there, the horn was on the train, the light was on the train. The other two prongs did their part. If she had done her part we wouldn't be here, would we?

A:     That's correct.

The City of Jeanerette also points to testimony by Dr. Dart that Palacios did not testify that her vision was obscured by brush. Johnny Sonnier, who was in the cab

3

of the train at the time of the accident, also testified. According to his testimony, he had a clear sight of the vehicle as it approached the track. He saw the headlights of Palacios' vehicle, and the vehicle never slowed down or stopped. Furthermore, the City of Jeanerette recites the testimony of the train engineer, Kevin McNemar, that when he exited the train and approached the vehicle after the accident, he heard the car's radio blaring from six to eight car lengths away.

In *Darbone v. State*, 01-1196, pp. 3-4 (La.App. 3 Cir. 2/6/02), 815 So.2d 943, 947, *writ denied*, 02-0732 (La. 5/31/02), 817 So.2d 94, this court noted:

> In *Broussard v. Stack*, 95-2508, pp. 14-16 (La.App. 1 Cir. 9/27/96); 680 So.2d 771, 779-81 (citations omitted), the court considered the standards of appellate review for the denial of a motion for JNOV, grant of a motion for JNOV, and denial of a motion for new trial, holding:
>
>> In ruling on a motion for judgment notwithstanding the verdict (JNOV) under LSA C.C.P. art. 1811, the trial court is required to employ the following legal standard: A JNOV should be granted only if the trial court, after considering the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on that issue. The trial judge must construe the evidence and make inferences in favor of the party opposing the motion. Additionally, in applying this standard, the court cannot weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. If there is substantial evidence opposed to the motion of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied. Stated more simply, a trial court can grant a JNOV only when a jury's verdict is one which reasonable people could not have rendered; if reasonable persons could have arrived at the same verdict given the evidence presented to the jury, then a JNOV is improper.
>>
>> The standard to be applied by the appellate courts in reviewing the grant or the denial of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous.

4

. . . .

> The motion for new trial requires a less stringent test than for a JNOV in that such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. In considering a motion for new trial, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusions and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness.

In ruling on Plaintiffs' motion for judgment notwithstanding the verdict, the trial court was required to determine whether the evidence viewed in the light most favorable to the City of Jeanerette pointed so strongly and overwhelmingly in favor of Plaintiffs that reasonable persons could not arrive at a contrary verdict on the issues of whether the City of Jeanerette engaged in negligent conduct, and whether the railroad crossing at issue was an unreasonably dangerous condition or created an unreasonable risk of harm. The jury did hear testimony that Palacios' vision was not obscured by brush, that the advanced warning sign and cross buck sign were in place, and that the train's lights and whistle were operating at the time of the accident. The trial court, in its written reasons for denial of the motion for judgment notwithstanding the verdict, stated that "based upon the testimony at the trial reasonable minds could reach the decision that the Plaintiff did not see the train nor stop for the train and was not obscured and could have seen the train had she looked." We agree. Given the testimony and other evidence presented herein, there was a reasonable basis for the jury's findings, and we are not convinced that reasonable persons could not arrive at any verdict other than one in favor of Plaintiffs. Thus, we cannot say that the trial court's denial of Plaintiffs' motion for judgment notwithstanding the verdict was manifestly erroneous. For these same reasons, we find no error in the trial court's denial of Plaintiffs' motion for a new trial.

Plaintiffs' remaining assignments of error deal with their contention that the jury's verdict was inconsistent. This contention is based on Plaintiffs' assertion that although the jury answered the first two questions on the jury verdict form regarding whether the City of Jeanerette was negligent and whether the crossing was unreasonably dangerous in the negative, they went on to assign twenty percent of the fault to the City of Jeanerette. Plaintiffs argue that judgment should be entered finding the City of Jeanerette twenty percent at fault and awarding damages to Plaintiffs in accordance with such a finding. We find these arguments to be without merit.

Sometime after deliberations began, the jury returned to the courtroom for clarification of the instructions on the jury sheet. The trial court noted, "some of it [the verdict form] is filled out. It's not signed. And there is a note about whether they have to figure this [the percentages of fault] out."

The jury verdict form, in pertinent part, read as follows:

1.    Did the City of Jeanerette engage in negligent conduct?

        YES _____          NO _____

2.    Do you find the City of Jeanerette breached its duty to Maria Palacios because a roadway, signage, or obstruction under its control was defective and created an unreasonable risk of harm?

        YES _____          NO _____

(IF YOU ANSWER "NO" TO ALL QUESTIONS ABOVE, YOU ARE FINISHED. SIGN THE VERDICT FORM AND RETURN TO THE COURTROOM. IF YOU ANSWER "YES" TO ANY OF THE ABOVE, ANSWER THE OTHER QUESTIONS.)

Apparently, when the jury returned to the courtroom, they had answered both of the above questions in the negative but had filled in twenty percent for the City of Jeanerette in response to the question concerning the degree of fault assignable to

each party. The jury's question was whether or not it had to complete the form. The judge instructed them to read the instructions after question two. The jury then returned to the jury room and completed the form according to the instructions thereon. At that point, they erased any answers to questions after question two, signed the form, and returned to the courtroom. The verdict was read aloud, and counsel for Plaintiffs requested that the jury be polled. The verdict was found to be unanimous.

Plaintiffs contend that the jury was confused by the verdict form and the concept of negligence such that the verdict rendered by the jury was unreliable and inconsistent with the facts and evidence in this matter. The trial court denied the Plaintiffs' motions for judgment notwithstanding the verdict and for a new trial based on jury confusion because it did not find that the jurors were confused as to their final verdict after further instructions by the court. We agree.

"[A] verdict based on the interrogatories should not be set aside unless the form prevented the jury from reaching a legally correct verdict." *Chatelain v. Rabalais*, 04-28, p. 14 (La.App. 3 Cir. 7/7/04), 877 So.2d 324, 334 (citing *Campbell v. Hosp. Serv. Dist. No. 1 Caldwell Parish*, 37,876 (La.App. 2 Cir. 12/10/03), 862 So.2d 338, *writ denied*, 869 So.2d 852 (La. 3/19/04)). Misleading or confusing interrogatories may constitute reversible error, but the manifest error standard of appellate review still applies except where the jury interrogatories are so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts. *Doyle v. Picadilly Cafeterias*, 576 So.2d 1143 (La.App. 3 Cir. 1991). From our review of the record, we do not find that to be the case here since the questions on the jury verdict form and the instructions that follow are neither confusing nor misleading. And, furthermore, had the trial judge done more than tell the jury to read the instructions,

7

he might have run afoul of La.Code Civ. P. art. 1791 which provides: "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."

## DECREE

The judgment of the trial court is affirmed in all respects. Costs of this appeal are taxed against Plaintiffs-Appellants, Maria Palacios , individually and on behalf of her minor children, Jenny Garcia, Jose Garcia, Cynthia Palacios, and Jennifer Palacios.

**AFFIRMED.**

MARIA PALACIOS, ET AL.

VERSUS

LOUISIANA & DELTA RAILROAD, INC., ET AL

THIBODEAUX, Chief Judge, dissenting.

My principal disagreement focuses on the manner in which the trial court handled the inconsistent answers on the jury verdict form. The majority concentrates on the law regarding a deficiency in the jury verdict form. That focus is misplaced. The attorney for the plaintiffs conceded during oral argument that the form was approved and was not defective. It is the procedure followed by the trial court which allowed for this inconsistent verdict.

The cases relied upon by plaintiffs, namely, *Parliman v. Kennelly*, 520 So.2d 445 (La.App. 5 Cir. 1988) and *Miley v. La. Farm Bureau Cas. Ins. Co.*, 599 So.2d 791 (La.App. 1 Cir. 1992) are not quite on point but are instructive. In *Miley*, the jury was given instructions on at least two occasions with regard to the inconsistency and the matter was resubmitted to the jury. After this was done, the jury still attributed ten percent fault to one of the tortfeasors but failed to find that his conduct was a cause-in-fact of the accident. This inconsistency was error. In *Miley*, the jury was reinstructed twice. Here, the trial judge simply told the jurors to reread the instruction previously given on the jury verdict form after question number 2. In *Parliman* the jury verdict form was returned with inconsistent answers and had been

signed, i.e., completed. In this case, the jurors requested guidance on the form before the final signed copy was given to the trial judge. Nonetheless, in both *Parliman* and *Miley*, the answers to the jury verdict form questions were inconsistent. Similarly, the answers in this case were inconsistent, but we are left to wonder whether the jury attributed twenty percent to Jeanerette before answering questions 1 and 2, or whether those questions were decided first by the jury before the assessment of fault.

Upon determining reversible error in the inconsistent answers on the jury verdict form, I would proceed to a review of the propriety of the denial of the JNOV.

The plaintiffs' expert testified that excessive vegetation obscured the plaintiff's view and the crossing had inadequate signage. There was nothing to show that the uncontradicted testimony of Dr. Dart, the expert, was unreliable. While Johnny Sonnier testified that he could see the plaintiff's vehicle, his testimony did not demonstrate that the plaintiff could see the train. The testimony by the defendant's witness shows the plaintiff's negligence and the cross-examination of Dr. Dart shows some negligence on the plaintiff. I do not feel, however, that her negligence was one hundred percent and that Jeanerette should be completely exculpated. The City of Jeanerette was at least partially at fault, and twenty percent was a reasonable assessment.

For the foregoing reasons, I respectfully dissent.